IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA

| | |
|---|---|
| Monalynn Santos and Manaura Quichocho, | ) ) ) |
| Plaintiffs, | ) ) ) |
| vs. | ) ) |
| Primerica Life Insurance Company, | ) ) |
| Defendant. | ) ) |

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Case No. 1:22-cv-066

Before the Court is the Defendant's motion for summary judgment filed on May 25, 2023. See Doc. No. 18. The Plaintiffs filed a response in opposition to the motion on June 15, 2023. See Doc. No. 22. The Defendant filed a reply brief on June 29, 2023. See Doc. No. 24. For the reasons set forth below, the Defendant's motion for summary judgment is granted.

I.   **BACKGROUND**

On December 17, 2008, Margarita Iguel completed and signed an Application for Life Insurance ("Application") with Primerica Life Insurance Company ("Primerica"), for coverage in the initial amount of $150,000. See Doc. No. 19-1. At the time, Iguel resided in Guam. Plaintiffs Manaura Quichocho and Monalynn Santos, her daughters, were named as primary beneficiaries. Quichocho and Santos live in North Dakota. John Concepcion, an independent insurance agent for Primerica who lives in Guam, assisted Iguel with the completion of her application. On the application, Iguel revealed she took medication for high blood pressure but had other medical problems. Primerica issued policy number 0434012532 ("Policy") to Iguel on January 24, 2009,

1

with a term life insurance policy date of January 15, 2009.  See Doc. No. 19-2.  The Policy was a level-term life insurance policy for the first ten years which meant the premium and a death benefit remained the same over the first ten years.  After the first ten years the premiums were subject to increase.  See Doc. No. 19-2, p. 5.  The Policy also included an exchange provision which allowed the insured to switch to a plan with level premiums and decreasing coverage without proof of insurability.  See Doc. No. 19-2, pp. 9-13.

Iguel regularly paid her premiums from 2008 until 2017.  Between November 15, 2017, to December 15, 2017, Iguel's bank account had insufficient funds to cover the premium payment. See Doc. No. 19-3, p. 2.  Primerica continued to attempt to collect overdue premium payments but on January 16, 2018, it sent notice to Iguel that her policy had lapsed for failure to make her premium payments.  See Doc. No. 19-3, p. 6.  However, the letter advised her that the policy could be placed back in force if she remitted a payment of $289.96 no later than February 11, 2018.  On February 14, 2018, when no payment was received by that date, Primerica sent another notice advising Iguel that she could still apply for reinstatement of her policy by completing and returning a reinstatement application.  See Doc. No. 19-3, p. 8.  Iguel completed the reinstatement application on March 9, 2018 ("2018 Reinstatement Application").  See Doc. No. 19-4.  Iguel did so with the assistance of her insurance agent, John Concepcion.

As part of the 2018 Reinstatement Application, Iguel was required to answer six questions regarding her insurability, including whether, in the preceding three years, she had been treated for or diagnosed with hypertension (high blood pressure), diabetes, any other heart disease or disorder, or any kidney disease, among other health concerns.  See Doc. No. 19-4, p. 2.  She answered "no" to each of these, and also indicated that she was not taking any prescription medication.  On March

19, 2018, Primerica sent a notice that reinstatement of the Policy had been approved. See Doc. No. 19-5.

A few months later, Iguel again failed to pay her premium, and on September 15, 2018, Primerica sent another notice of past due payment. See Doc. No. 19-6. This notice was followed by others subsequent to the Policy's lapse, one of which allowed her to keep her coverage in force by remitting the past due payment of $243.46 no later than January 11, 2019. See Doc. No. 19-6, p. 11. Iguel failed to timely pay the overdue amount, and the Policy remained in a lapsed status. See Doc. No. 19-7.

On March 4, 2019, Iguel utilized the reinstatement application sent to her by Primerica to again apply for reinstatement ("March 2019 Reinstatement Application"). See Doc. No. 19-8. Iguel's daughter, Quichocho, assisted her with the March 2019 Reinstatement Application. The March 2019 Reinstatement Application required Iguel to answer a number of questions, including whether she was currently taking any prescription medication, and whether she had had any illness or treatment by a physician in the three years preceding the date of application. See Doc. No. 19-8, p. 2. Iguel answered these questions in the negative. Primerica reinstated the Policy, notifying Ms. Iguel by letter dated March 26, 2019. See Doc. No. 19-10.

Almost immediately after the second reinstatement of her policy, Iguel again failed to timely pay her premiums. On June 14, 2019, she made her third application ("June 2019 Reinstatement Application") for reinstatement of her policy, this time with the assistance of her insurance agent, John Concepcion. See Doc. No. 19-11. Concepion assisted Iguel with the June 2019 Reinstatement application by telephone as Iguel had moved from Guam to North Dakota. See Doc. No. 19-13. In response to the medical history questions on the application, Iguel indicated she had not been

diagnosed or treated for any of the listed medical conditions in the past ten years and had not been hospitalized within the past twelve months. See Doc. No. 19-11, p. 3. By letter dated June 25, 2019, Primerica notified Iguel that her Policy had been reinstated. See Doc. No. 19-15. This letter was addressed to Iguel at her post office box in Hagatna, Guam. However, Iguel had relocated to Bismarck, North Dakota by this time.

The June 2019 reinstated Policy had a issue date of July 2, 2019. See Doc. No. 19-20, p. 4. The 2019 reinstated Policy contains contestability and reinstatement provisions. See Doc. No. 19-20 The contestability provision provides that Primerica will not "contest this Policy after it has been in force for two years during the Insured's life" and "[t]he two years begin on the Date of Issue." See Doc. No. 19-20, p. 8. The reinstatement provision provides that, "[t]he reinstated Policy shall be incontestable to the same extent as indicated in the above Incontestability Provision, from the reinstated date. This means that the two year contestability period will begin anew with the reinstatement." See Doc. No. 19-20, p. 10.

The Policy's first ten-year term ended on January 15, 2020, which was a year later than it otherwise would have been due to the three times the Policy lapsed due to non-payment of premiums. On August 19, 2019, Primerica sent Iguel a notice that, per the terms of the Policy, her premiums would be increasing to $240.22 per month. See Doc. No. 24-1. The notice also informed Iquel she had the option to exchange her plan for the Custom Exchange plan, "without having to answer medical questions." See Doc. No. 24-1, p. 2. Iguel pursued the coverage conversion option and contacted agent, John Concepcion, for assistance, ultimately completing a policy change application for an "end of term" conversion. See Doc. 22-4, p 2. Iguel sought to have her coverage converted to a "cust exch-10" and to have coverage reduced to a total of $167,500, resulting in a

premium of $175.38 per month. See Doc. 22-4, p. 8. The 2020 Coverage Change Application was submitted on January 30, 2020. See Doc. 22-4, p 12.

However, rather than signing the 2020 Coverage Change Application, Iguel printed her name. See Doc. 22-4, p 12. Because Iguel failed to sign the application, and because she had outstanding unpaid premium on the Policy, Primerica notified Concepcion on March 2, 2020, that the 2020 Coverage Change Application required corrections before it could be processed. See Doc. 22-7. Primerica never received the corrections and the conversion was never processed. Primerica did not notify Iguel it had rejected her 2020 Coverage Change Application or send her a notice confirming the requested coverage change. Primerica continued to assess the $240.22 monthly premium associated with the original coverage, as reinstated by the June 2019 Reinstatement Application, rather than assessing the lower $175.38 premium sought as part of the 2020 Coverage Change Application. See Doc. No. 22-6. The premiums were directly deducted from Iguel's checking account.

Iguel died in a Bismarck, North Dakota, hospital on November 6, 2020, from cardiac arrest related to a bout of pneumonia. See Doc. No. 19-19. The death certificate noted that hypoxia encephalopathy, secondary hyperparathyroidism, lactic acidosis, end-stage renal disease, and hyperlipidemia were contributing factors. Id. Following the death of Iguel, Quichocho and Santos submitted their claims under the Policy to Primerica. See Doc. No. 19-21.

Because Iguel's death occurred within two years of the final reinstatement of the Policy, Primerica initiated a routine investigation, during which it obtained Iguel's medical records from health providers in Bismarck, North Dakota, and Guam. See Doc. Nos. 19-16, 19-17, and 19-18. These records revealed Iguel had a history of hypertension, diabetes, chronic renal failure, pulmonary

5

edema, and cardiomegaly, was taking a number of prescription medications, including Metformin, Tramadol, Clonidine, Glipizide, Lisinopril, Metoprolol, and Gabapentin, and had been hospitalized on multiple occasions between 2015 and 2019.  Primerica would have denied coverage had Iguel fully disclosed her relevant medical history on the June 2019 Reinstatement Application.  See Doc. No. 23, pp. 30, 103-04.

By letter dated March 19, 2021, Primerica denied coverage based on Iguel's failure to disclose her relevant medical history.  See Doc. No. 19-22.  The Plaintiffs filed this lawsuit in state court in March of 2022.  The case was removed to federal court on April 14, 2022.  See Doc. No. 1.  The Plaintiffs allege breach of contract.  Primerica has moved for summary judgment.  The motion has been fully briefed and is ripe for consideration.

## II.     STANDARD OF REVIEW

Summary judgment is appropriate when the evidence, viewed in a light most favorable to the non-moving party, indicates that no genuine issues of material fact exist and that the moving party is entitled to judgment as a matter of law.  Davison v. City of Minneapolis, 490 F.3d 648, 654 (8th Cir. 2007); see Fed. R. Civ. P. 56(a).  Summary judgment is not appropriate if there are factual disputes that may affect the outcome of the case under the applicable substantive law.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  An issue of material fact is genuine if the evidence would allow a reasonable jury to return a verdict for the non-moving party.  Id.  The purpose of summary judgment is to assess the evidence and determine if a trial is genuinely necessary.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

The Court must inquire whether the evidence presents a sufficient disagreement to require

the submission of the case to a jury or whether the evidence is so one-sided that one party must prevail as a matter of law.  Diesel Mach., Inc. v. B.R. Lee Indus., Inc., 418 F.3d 820, 832 (8th Cir. 2005).  The moving party bears the responsibility of informing the court of the basis for the motion and identifying the portions of the record which demonstrate the absence of a genuine issue of material fact.  Torgerson v. City of Rochester, 643 F.3d 1031, 1042 (8th Cir. 2011).  The non-moving party may not rely merely on allegations or denials in its own pleading; rather, its response must set out specific facts showing a genuine issue for trial.  Id.; Fed. R. Civ. P. 56(c)(1).  If the record taken as a whole and viewed in a light most favorable to the non-moving party could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial and summary judgment is appropriate.  Matsushita, 475 U.S. at 587.

### III.   LEGAL DISCUSSION

In its motion for summary judgment, Primerica contends Iguel failed to disclose her relevant medical history on the June 2019 Reinstatement Application and consequently Primerica was within in rights under the contract to rescind the Policy.  The Plaintiffs contend Iguel did not actually make any misrepresentations of the June 2019 Reinstatement Application and, in any case, the 2020 Coverage Change Application was the operative contract.

#### A.   June 2019 Reinstatement Application

It is undisputed that Iguel dictated the responses to the June 2019 Reinstatement Application to Primerica's agent, John Concepcion, over the telephone.  It is also undisputed that if Iguel did in fact make the false representations, Primerica would not have approved the June 2019 Reinstatement

Policy and rescission of the Policy would be justified.

The Plaintiffs contend that because Concepcion only sent Iguel the signature page and not the entire application she never ratified the information and there exists a material dispute as to whether Concepcion accurately recorded her answers. The contention fails because it is unsupported by any material evidence. Concepcion gave a statement regarding the June 2019 Reinstatement Application on January 22, 2021, in which he stated Iguel told him there were "[n]o changes to medical history." See Doc. No. 19-13. The record reveals no evidence that Concepcion recorded the wrong information on the June 2019 Reinstatement Application. See Doc. 22 at 12.

The answers Iguel gave on her June 2019 Reinstatement Application denying any relevant medical history are consistent with the inaccurate statements regarding her medical history she made in her two prior reinstatement applications. Compare Doc No. 19-4, 19-8, and 19-11. The two prior reinstatement applications were both recorded in Iguel's presence, either by Primerica Agent John Concepcion or her daughter Manaura Quichocho. The consistency of the false statements in all three reinstatement applications and the 2020 Coverage Change Application shows a pattern of omitting relevant medical history.

Speculation alone is insufficient to create a genuine dispute as to a material fact. Riverside Park Condominiums Unit Owners Ass'n v. Lucas, 691 N.W.2d 862, 874 (N.D. 2005). The Court concludes Primerica has demonstrated there is no genuine dispute that Iguel made false representations regarding her medical history on her June 2019 Reinstatement Application.

### B.     2020 Coverage Change Application

In response to Primerica's motion for summary judgment, the Plaintiffs contend the Policy

had been replaced by the Custom Exchange Plan in 2020 which did not require underwriting. Primerica maintains the 2020 Coverage Change Application was never accepted and no coverage change was ever made.

The 2020 Coverage Change Application was completed on January 30, 2020. See Doc. No. 22-4. The purpose of the coverage change was to lower the amount of coverage and the premiums. On March 4, 2020, Primerica rejected the 2020 Coverage Change Application because Iguel failed to sign it (she printed her name instead) and outstanding premiums had not been paid. See Doc. No. 22-7. The notice listing the corrections necessary in order to get the application processed was sent to Primerica's agent, Concepcion, rather than Iguel. There is no evidence in the record Concepcion ever made Iguel aware of the deficiencies in her application. Iguel died on November 6, 2020.

The 2020 Coverage Change Application provides Primerica will have no liability under the application until "(1) coverage is issued on this Application and delivered to and accepted by the owner; and (2) the first premium due under this Application is paid in full while each insured is alive." See Doc. No. 22-4, p. 11. The 2020 Coverage Change Application did not require medical underwriting. See Doc. No. 22-5, p. 6. However, the 2020 Coverage Change Application contained a number of questions about medical history which Iguel answered in the negative. Her answers were clearly false. The necessary corrections were never made. Primerica never notified Iguel that the 2020 Policy Change Application had been accepted or rejected. No revised policy was ever issued. Primerica continued to assess the $240.22 monthly premium associated with the original coverage, as reinstated by the June 2019 Reinstatement Application, rather than assessing the lower $175.38 premium sought as part of the 2020 Coverage Change Application. See Doc. No. 22-6.

The formation of a contract requires parties capable of contracting, the consent of the parties,

a lawful object, and consideration. Bakke v. Magi-Touch Carpet One Floor & Home, Inc., 920 N.W.2d 726, 730 (N.D. 2018); Good Bird v. Twin Buttes Sch. Dist., 733 N.W.2d 601, 605 (N.D. 2007); N.D.C.C. § 9-01-02. The parties dispute whether Primerica gave its consent to the 2020 Coverage Change Application.

The 2020 Coverage Change Application clearly states Primerica will have no liability under the application until coverage is issued, delivered, and accepted by the insured and the first premium is paid. None of these requirements occurred. No notice of acceptance or rejection was ever sent by Primerica to Iguel. No new policy was issued. No premiums were collected. Primerica rejected the 2020 Coverage Change application as incomplete as it was not signed and outstanding premiums had not been paid. The only premiums collected were in the amount due on the June 2019 Reinstatement Application. In her past dealings with Primerica Iguel had been sent a notice of acceptance or reinstatement and a copy of the new policy along with a receipt confirming delivery which she was required to sign. None of this occurred in relation to the 2020 Coverage Change Application.

Primerica certainly had good grounds to reject the 2020 Coverage Change Application, but it failed to communicate its rejection to Iguel. Primerica only notified its agent, Concepcion, of the need for a signature and payment of outstanding premiums. Under North Dakota law, this failure to communicate the rejection arguably creates a question of fact as to whether Primerica consented. Lechler v. Montana Life Ins. Co. of Helena, Mont., 186 N.W. 271, 273 (N.D. 1921). "[W]here the relations between parties have been such as to justify the offerer in expecting a reply, or where the offeree has come under some duty to communicate either a rejection or acceptance, his failure to communicate his rejection or to perform this duty may result in a legal assent to the terms of the

offer." Lechler, 186 N.W. at 274. Both parties point to their past dealings to support their position. Primerica points out that in the past it had always sent Iguel notice of acceptance or reinstatement and a copy of the new policy along with a receipt confirming delivery which she was required to sign. Since it did not do any of these things Primerica contends it cannot be held to have consented to the 2020 Coverage Change Application despite its failure to notify Iguel it had rejected the application. The Plaintiffs argue the past dealings between Primerica and Iguel always involved direct notification between Primerica and Iguel and it would have been reasonable for Iguel to expect direct notification of the rejection of her 2020 Coverage Change Application. A jury could reasonably decide the issue either way. As the North Dakota Supreme Court pointed out long ago, when an insurance company rejects an application it has to assume the "legal consequences of its failure to communicate its rejection to the applicant." Lechler, 186 N.W. at 273. The record before the Court is too thin to grant summary judgment on the question of consent which the Court finds to be material and disputed.

But even assuming a contract was formed based on the 2020 Coverage Change Application, Primerica is still entitled to summary judgment. Iguel having provided material false information regarding her medical history on the 2020 Coverage Change Application, albeit voluntarily, and the June 2019 Reinstatement Application, Primerica is entitled to rescind. Countryside Cas. Co. v. Orr, 523 F.2d 870, 872 (8th Cir. 1975) ("a material misrepresentation made on an application for an insurance policy and relied upon by the insurance company will void the policy"). The general rule is that, in the absence of a new application, an insurance company may rely on information provided in prior applications and/or renewals. Batka v. Liberty Mut. Fire Ins. Co., 704 F.2d 684, 687 (3d Cir. 1983) ("in the absence of a new application[,] renewal of a . . . policy is made on the assumption that

the facts disclosed in the original application are true"); Pioneer Indus. v. Hartford Fire Ins. Co., No. 07-4421, 2009 WL 2187379, at *10 (D. Minn. July 22, 2009) (citing *Batka* to hold that an insurance company was "entitled to rely on representations made by [the insured] in earlier applications when renewing or issuing new policies . . . ."); Borden v. Paul Revere Ins. Co., 935 F.2d 370, 378 (1st Cir. 1991) (finding material misrepresentations as to medical history on the first application warranted rescission of the first policy and the replacement policy). Had Iguel been truthful on her June 2019 Reinstatement Application, not to mention her March 2019 Reinstatement application and 2018 Reinstatement Application, no policy would have been issued and the circumstances attendant to the 2020 Coverage Change Application never would have arisen. Borden, 935 F.2d at 378 (noting statements made in an insurance application constitute continuing representations). Primerica would be entitled to rescind the 2020 Coverage Change Application based upon the false medical history information provided on the June 2019 Reinstatement Application. N.D.C.C. §§ 26.1-29-15 and 26.1-29-24; Thomas v. New York Life Ins. Co., 260 N.W. 605, 612 (N.D. 1935) (noting false representations regarding medical history are grounds for rescission); Lindlauf v. N. Founder's Ins. Co., 130 N.W.2d 86, 89 (N.D. 1964) (finding misrepresentations regarding medical conditions were grounds to avoid a life insurance policy); Borden, 935 F.2d at 377 (noting the well-established rule that an insurance policy may be rescinded based upon material false representations in the application). On this record of repeated material false representations by Iguel as to her medical history, rescission by Primerica was warranted.

### IV.   CONCLUSION

The Court has carefully reviewed the record, the parties' briefs, and the relevant case law.

For the reasons set forth above, the Defendant's motion for summary judgment (Doc. No. 18) is **GRANTED**.

    **IT IS SO ORDERED**.

Dated this 24th day of August, 2023.

                                            */s/  Daniel L. Hovland*
                                            Daniel L. Hovland, District Judge
                                            United States District Court